No. **A-CV-16-93**
# Supreme Court of the Navajo Nation

---

**Nora J. Morris, Appellant,**
v.
**Navajo Board of Election Supervisors, Appellee.**
**Decided December 9, 1993**

---

OPINION

Before YAZZIE, Chief Justice, and AUSTIN, Associate Justice.

Leonard Tsosie, Esq., Crownpoint, Navajo Nation (New Mexico), for the
Appellant; and Kathleen Bowman, Esq., Navajo Nation Department of Justice,
Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

On April 27, 1993, a special election was held in Canoncito Chapter to elect
a chapter secretary/treasurer. The appellant was a candidate in this election. On
this day, four employees of the Navajo Election Administration arrived in
Canoncito before 8:00 a.m., but the chapter house, where the voting was to take
place, was not open. After some delay, the polls opened at 8:10 a.m. To com-
pensate for the delay, the polls remained open until 7:10 that evening.

The Canoncito Chapter had not recommended individuals to act as poll offi-
cials, so the four employees were arbitrarily tagged as the chief poll judge and
poll officials. The Election Code requires the presence of a police officer in the
vicinity of the polls, but a police officer was not present throughout the day to
provide security.

Some individuals were not allowed to vote because their voter registrations
could not be verified, however, the poll officials did not keep a record of these
individuals. Two voting machine consultants from Ink Impressions and two non-
consultants from other tribes were present in the area observing the election. No
absentee ballots were cast. The appellant received 105 votes and her opponent
received 108 votes.

The appellant filed a statement of grievance on May 7, 1993 with the Navajo
Board of Election Supervisors (Board). A hearing was held on May 27, 1993. On
June 10, 1993, the Board issued written findings of fact, conclusions of law and
an order upholding the special election results. The Board passed a resolution on
that same day approving its written decision. Navajo Board of Election
Supervisors Res. No. BOESJN-024-93. The appellant appeals that decision pur-
suant to 11 N.T.C. § 321 B.4. (1990).

# I

The previous election code, passed in 1966 and its subsequent amendments in 1979, did not set forth a burden of proof for the aggrieved party or a standard of review for the Supreme Court. See 11 N.T.C. § 407(a), (c) (1979). Consequently, this Court outlined the standards of review for elections in *Johnson v. June*, 4 Nav. R. 79 (1983), which are these:

1. Election results are presumed to be regular and proper;
2. Irregularities or misconduct in an election which does not tend to effect (sic) the result or impeach the fairness of the result will not be considered;
3. Elections will not be set aside unless the facts definitely show such fraud and that there was no fair election; and
4. After an election, election provisions are to be seen as directions unless the violations obstructed a free and intelligent vote, affected an essential element of a valid election or an omission of a direction voids the election.

*Id.* at 82.

The Navajo Nation Council passed a new election code in 1990. Navajo Nation Council Res. CAP-23-90 (passed April 6, 1990). The 1990 Election Code establishes a standard of review for the Supreme Court, which is as follows:

A party who wishes to appeal from a decision of the Board must file a Notice of Appeal with the Supreme Court of the Navajo Nation within ten days after the decision is made. Review by the Supreme Court shall be limited to whether or not the decision of the Board is sustained by sufficient evidence on the record.

11 N.T.C. § 321 B.4.

The 1990 Election Code limits this Court's scope of review to whether the Board's decision is supported by sufficient evidence in the record. *Pioche v. Navajo Board of Election Supervisors*, 6 Nav. R. 360 (1991). Thus, we can only address whether the Board abused its discretion. See, *Secatero v. Navajo Board of Election Supervisors*, 6 Nav. R. 385 (1991). The 1990 Election Code also imposes a burden of proof on the aggrieved party, which is to present clear and convincing evidence to prove the allegations in his or her statement of grievance. 11 N.T.C. § 321 B.2.

This Court interpreted the 1990 Election Code in *Haskie v. Navajo Board of Election Supervisors*, 6 Nav. R. 336 (1991), and stated that the Board must apply the standards developed in *Johnson* to decide election disputes. *Id.* at 338. Thus, the Court said, "Haskie had the burden of proof to overcome the presumption that the election was regular and proper, as well as that of proving an invalid election under the provisions of the Navajo Election Code of 1990." *Id.* at 339.

The Board is guided in its decision-making process by the burden of proof set forth in Section 321 B.2 of the 1990 Election Code and the *Johnson* standards. After the Board has held a hearing, it must use a two-step test to reach a deci-

sion. The first step is whether the aggrieved party has proved the allegations in his or her statement of grievance with clear and convincing evidence. 11 N.T.C. § 321 B.2. The second step is whether the aggrieved party overcame the presumption of a valid and proper election, as delineated in the *Johnson* principles. Irregularities that do not affect the election results or impeach the fairness will not succeed in overcoming the presumption. *Johnson*, 4 Nav. R. at 82.

In this case, the appellant alleged in her statement of grievance that the election officials committed several violations of the Election Code, which she argued should result in a nullification of the election. The Board held a hearing concerning the allegations, used the two-step test described above, and upheld the election results. The issue here is whether the Board abused its discretion in doing so.

First, the appellant alleged that the Navajo Election Administration personnel served as poll officials in violation of 11 N.T.C. § 328 A. The Board found that the officials conducted the election, but they were authorized to do so by Board Resolution No. BOESF-014-93. The Board has that discretionary power. 11 N.T.C. § 321 A.18. Aside from questions on authority, the Board did not find any misconduct by the poll officials in conducting the election. Furthermore, the Board concluded that the appellant did not show how the alleged violation resulted in an unfair election or changed the election results. We agree with the Board.

Second, the appellant alleged that a police officer was not present at the poll site in violation of 11 N.T.C. § 81.F. The Board found this allegation to be true. However, the Board found that the appellant did not present any evidence which indicated that someone did not vote due to the absence of a police officer. There was also no evidence that an officer's absence hindered any voting activities. Thus, a police officer's absence did not affect the outcome of the election. We agree with the Board.

Third, the appellant alleged that the polls were not opened at exactly 8:00 a.m. and closed at 7:00 p.m. in violation of 11 N.T.C. § 82. The Board found this to be true. However, there was insufficient evidence that anyone went home ten minutes before the polls opened and did not vote later in the day. The polls remained open ten minutes later and the Board found this practically reasonable, because the polls opened ten minutes late. Any other decision may have been unfair. The appellant failed to show how the election results would have differed if the polls had opened and closed on time. We agree with the Board.

Fourth, the appellant alleged some people were denied the right to vote. However, the Board found that the appellant did not provide enough information concerning the names or the number of people who were turned away. Some individuals were not permitted to vote because their voter registrations could not be verified; however, this does not prove misconduct or fraud by election officials. The appellant's argument was found to be speculative by the Board. We agree with the Board.

Fifth, the appellant alleged that the Election Administration officials did not

make absentee balloting available and had it been allowed, she may have won the election. The appellant did not provide any evidence that an absentee voter requested a ballot and was denied one. The Board found that no absentee ballots were requested. The appellant did not pass the first step of the test.

Sixth, the appellant alleged that unauthorized persons were allowed in the polling areas. Two voting machine consultants and two visitors from other tribes were permitted to observe the voting. Again, the Board found no impact on the voting process or on the election results due to the presence of the visitors and consultants. We agree.

Finally, the appellant argues on appeal that the aggregation of her alleged violations is sufficient to nullify the election results. *Nakai v. MacDonald* addresses that claim: "No single irregularity nor all the irregularities testified to combined would have been sufficient to alter significantly the plurality of votes for [the winning candidate]." 1 Nav. R. 107, 111 (1975).

## II

The appellant also raises a due process argument, which implicates the Board's hearing and decision-making process. She claims that Board Member Stanley Milford's participation in the Board's decision-making process violated her right to due process, because he was "present at the election." Brief of Appellant at 9. The due process issue is not limited by the Court's scope of review set forth in Section 321 B.4. This Court can exercise its civil rights jurisdiction to hear due process and other constitutional challenges to the Board's actions. *Pioche*, 6 Nav. R. at 363; *see also, Arizona Public Service Co. v. Office of Navajo Labor Relations*, 6 Nav. R. 246, 268-269 (1990) (whether or not a party received a fair hearing before a board is a question of law, because the right to a fair hearing is guaranteed as an element of due process).

The appellant claims Milford participated in the election and was a witness to election law violations, therefore, he should have been disqualified from the Board's decision-making process. Milford was the only Board member present at the election. However, there is no evidence he engaged in any misconduct or was observed doing anything improper. The record does not show that Milford said anything to a voter to try to influence his or her vote. A due process claim does not arise simply because Milford was present and participated in the election. The appellant's due process claim is without foundation.

For the reasons stated, the June 10, 1993 decision of the Navajo Board of Election Supervisors is AFFIRMED.